# UNITED STATES DISTRICT COURT
### for the
### District of Columbia
### Division

Michael Charles Pilot, as an individual,  )
Citizen in and of the United States,  )
Free man  )
c/o 14098 Marshall Ave., Warren,  )
County of Macomb, Michigan 48089  )
In Propria Persona, proper person  )
All Rights Reserved U.C.C. I-207 (308)  )
        (586) 764-2615  )
        Plaintiff,  )
  )
  )
    -v-  )
  )
  )
Defendant - - -1 - -  )
**Donald J. Trump,**  )
**in his official capacity as**  )
**President of the United States**  )
**White House, 1600 Pennsylvania**  )
**Avenue, Washington, District**  )
**of Columbia**  )
        Officially  )

Case: 1:19−cv−00251   JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 1/30/2019
Description: Pro Se Gen. Civ. (F−DECK)

The fine points of law are
    treated singly and Together

## COMPLAINT

---

    Plaintiff, Michael Charles Pilot, Citizen in and of the United States moves by and through this Complaint without an attorney for relief under Title 22 U.S.C. Section 1732 says as follows:

    Violation of the Administrative procedure Act, 5 U. S. C. § 706 , see Adm. Procedure Act. 5 U.S.C.A. § 551.

# INTRODUCTION

1. Plaintiff, Michael Charles Pilot is a Citizen in and of the United States living in the United States, having the creditable as a Citizen to bring this action for relief under the statutes of the United States/United States of America as the damaged Citizen.

2. Plaintiff by reference cites Case 1:17 -cv-00929 and Civil action No. 17-929 (CKK) and the newly cleated Civil Case No. 5:17-cv-11854 as foreign Judgment of the United States District Court for the District of Columbia suit against -Colleen Kollar-Kotelly and the additional named defendants in UNITED STATES DISTRICT COURT for the District of Columbia Division.

3. On this action - - - Damages to Counts - -1 through 10 MEMORANDUM OPINION AND TRANSFER ORDER dated May 23, 2017 elect- - - signature by COLLEENKOLLAR-KOTELLY - - - United States District Judge. NOTE and appeal was taken.

4. Upon information and belief Defendant - - 2 - Jeff Sessions, United States Attorney Officially, of the United States Department of Justice, is located at The Department of Justice, 950.

5. Jeff Sessions, United States Attorney is named because of the allegation that Colleen Kollar-Kotelly, as being sued as an individual acting under the color of law as United States District Judge, Colleen Kollar-Kotelly. Is alleged to have violated the "WESTFALL-ACT- and request certification under - -- , 28 U.S.C. § 2679, and empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct .

6. Jeff Sessions, United States Attorney is named in view of Osborn v. Haley, 549 U.S. 225 (2007) - - - The federal statute commonly known as the Westfall Act accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties, 28 U.S.C. § 2679(b)(1), and empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," § 2679(d)(1), (2). Upon such certification, the United States is substituted as defendant in place of the employee, and the action is thereafter governed by the Federal Tort Claims Act. If the action commenced in state court, the Westfall Act calls for its removal to a federal district court, and renders the Attorney General's certification.

7. Plaintiff citing the Court - - - " The Westfall Act's command that a district court retain jurisdiction over a case removed pursuant to § 2679(d)(2) does not run afoul of Article III. An Article

III question could arise in this case only if, [549 U.S. 228] after full consideration, the District Court determined that Haley engaged in tortious conduct outside the scope of his employment. Because, at that point, little would be left to adjudicate as to his liability, and because a significant federal question (whether he has Westfall Act immunity) would have been raised at the outset, the case would "aris[e] under" federal law as that term is used in Article III. Even if only state-law claims remained after resolution of the federal question, the District Court would have authority, consistent with Article III, to retain jurisdiction." Pp. 244-245.

" Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Attorney General concludes, that the incident or episode in suit never occurred." Pp. 245-253.

8. Defendant  - - 2 - Jeff Sessions, United States Attorney Officially, of the United States Department of Justice is [was]"NOT being SUED for monetary Damages" and THEREFORE substation is "NOT" necessary when the Question is raised of did Colleen Kollar-Kotelly's action in her Official Capacity violate her Constitutional and Federal Oath of Office in her action against Plaintiff-Petitioner, Michael Charles Pilot, Citizen of and in the United States as fully stated in his Cause of Action.

9. Defendant - - - 3 - - Channing D. Phillips, United States Attorney for the District of Columbia Officially, United States Department of Justice.

10. Channing D. Phillips, United States Attorney's Office is located at 555, 4ᵗʰ Street, NW., Washington, DC  20530 - - - (202)-252-7566 is being sued because the alleged violations by Plaintiff-Petitioner, Michael Charles Pilot, Citizen in and of the United States took place in the District of Columbia, Washington in the Sovereign Maryland state in the united states for Venue and Jurisdiction in the United States District Court for the District of Columbia, as the place where the act or omission occurred.

11. FURTHER - - - In the Event the United States moves for substitution the Unites States will be treated as an individual subject to monetary damages as a Defendant. For injury or loss of property loss of personal injury, (a) Attorney Fees, (b) Mental anguish and emotional distress, (c) Humiliation (d) Fright and shock, (e) Loss of reputation, (f) Loss of personal income, (g) Loss of earning capacity  caused by the alleged misconduct of by COLLEENKOLLAR-KOTELLY acting under the color of statute as  - - - United States District Judge,  negligent or wrongful act or omission

as any employee   while acting outside of her scope of her office, employment as United States Federal District Judge, under circumstances where the United States would be liable to the claimant in accordance with the law of the place where the act or omission occurred, subject to the exclusive jurisdiction of the United States, District Court for the District of Columbia. See - - - Section 2674, also relevant to our decision, provides: The United States shall be liable, respecting . . . tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

12. That an ORDER Establishing Procedure for Cases Assigned to Judge COLLEEN KOLLAR-KOTELL, Signed by Judge COLLEEN KOLLAR-KOTELL on May 22, 2017 (NS) (Entered: 05/22/2017).  - -- - SEE Docket Entry - - - NR -3 - - - ATTACHED EXHIBIT - - - C - - - In Support.

13. That without notice and right to file his ( Michael Charles Pilot) Objections and Oppositions to United States District Judge COLLEEN KOLLAR-KOTELLY - - - ORDER denying the habeas petition and transferring the surviving civil case to the U.S. District Court for the Eastern District of Michigan (see written order for details). Signed by Judge COLLEENKOLLAR-KOTELLY on 5/23/2017 - - -- SEE docket entry - - - NR - 4 - -- ATTACHED EXHIBIT - - - D - -- In Support with copy of Judge COLLEEN KOLLAR-KOTELLY  - - - ORDER MEMORANDUM OPINION AND TRANSFER ORDER.

14. ATTACHMENT - --   without NR- Number- - - Case transferred to the U.S.D.C for the for the Eastern District of Michigan, pursuant to Court Order entered 5/23/ 2017 Sent to Court extraction (id) (Entered. 06/12/2017).

15. That  - - - NOTICE of Extraction of case transfer to U.S. District Court for Eastern District of Michigan (id) Entered: 06/12/2017. - -- SEE Docket Entry - - - NR. - 5  - - - ATTACHMENT EXHIBIT - - - E  - - - In Support.

16. ATTACHMENT - -- without NR- Number  - - - Received on 06/12/ 2017 of Electronic Transfer. Other Court Number 5:17-cv-11854 sent by U.S. District Court for the Eastern District of Michigan (zrdj) (Entered: 06/12/2017).

17. That Plaintiff-Petitioner, Michael Charles Pilot at NR - -- 6 - - - LEAVE TO FILE DENIED - Plaintiff's Motion to reverse memorandum opinion and transfer order "Leave to file

denied. Case was physically removed from this Court on 6/12/2017". This document is unviable as the Court denied its filing.  Signed by Judge COLLEEN KOLLAR-KOTELLY on 6/14/17. (td) (entered: 06/16 2017), - -- SEE Docker Entry - -- NR.- 6 - - - ATTACHED EXHIBIT - -- F - - - In Support.

18. Argument of  Judge COLLEEN KOLLAR-KOTELLY "actions to this document is unavailable  - -- SEE - - - **Title 18 § 1512.** "Tampering with a witness, victim, or an informant"(b);

"Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to" —

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to —

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; shall be fined under this title or imprisoned not more than ten years, or both."

19. Entire proceeding can be found on PACER at Civil Case Number - - - Civil Action in the United States District and Court of Appeals for the District of Columbia.

20. Plaintiff raised several arguments in support of this cause of action including brief in support with case law in support of this cause of action.

21. Michael Charles Pilot, Appellant, moved on Appeal from the United States District Court for the District of Columbia Civil Case No. 1:17-cv-01337-CRC - - -   OFFICIAL COURT APPEALS CAPTION is Challenged - -- Contested use of et.,al is signed and dated under Protest to the Official Caption

22. Plaintiff filed Appeal in the United  States Court of Appeals for the District of Columbia, United States Courthouse, 333 Constitutional Avenue, NW Washington, DC 20001, REFERENCE - - - NO. 17-5201 on Appeal District Court NO. 1:17-cv-01337-CRC.

23.  Plaintiff file Motion complaining of signer of Pleading - - - FOR THE COURT:  - - - Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk and moves for correction under Appellate Rules 3 and 4 to take an Appeal - - - Objections and Opposition;  (1.) Application for Relief - -- - to have Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge to sign - - - "ORDER" - -- "Upon consideration of petition for rehearing, it is ORDERED that the petition be denied." <u>Per Curiam</u> with Rule 11 Sanctions - - - signer of Pleading - - - FOR THE COURT:  - - -

Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk and moves for correction under Appellate Rules 3 and 4 to take an Appeal - - - Objections and Opposition - - - See First and Fifth Amendments to the Constitution of the United States.

24. That it should be noted that R. Craig Lawrence, Attorney for Defendants, U.S. Attorney's Office, (USC) Civil Division, 555 4th Street, NW, Washington, DC 20530, FIRM, 202-252-2500 filed his appearance on behalf of the Defendants- Appellees as the record of this Court - - - United States Court of Appeals, For the District of Columbia Circuit will reflect.

25. Note "NO" mention of Mark J. Langer, Clerk - --FOR THE COURT and Ken Meadows Deputy Clerk to be signers for  Attorney for Defendants, U.S. Attorney's Office, (USC) Civil Division, 555 4th Street, NW, Washington, DC 20530,FIRM, 202-252-2500 - - - or - - - Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge as signers. See Rule 11.

26. The **non signature** of the named Judges does not protect, was justified under the statutes of the United States of America.

27. Appellant, Michael Charles Pilot in the taking of an Appeal of the ORDER - - - Attached Filed on: March 9, 2018.

28. Plaintiff, Michael Charles Pilot's The Court - - -"Judges of United States courts are not liable to civil actions for their judicial acts." see  Bradley v. Fisher, 13 Wall. 335. - - - "The immunity of judges of the Supreme Court of the Philippine Islands from civil action for official acts is the same as that of judges of the United States."

29. "Act No.190 of the Philippine Commission did not impose any liability to civil actions for official acts on any judge of the Supreme Court of the Philippine Islands; that act related only to inferior judges."

30. "A statute such as that involved in this case, providing that no judge shall be liable to civil action for official acts done in good faith, will not be construed as rendering such judges liable to civil action for acts done in bad faith by implication."

    A. Plaintiff, Pilot's action was to establish liability acting in bad faith, to justify appeal and sanctions.

31. Citing the court - - -"Quaere whether the Philippine Commission has power to enact legislation making any judge liable to civil action for official acts." - - -     21 Phil. 308 affirmed."

32. The Court - - - "But, however it may be as to the matters that we have stated, we regard it as fundamental that the immunity of the defendant from this suit is the same as that of judges in the United States, which is established beyond dispute.  Bradley v. Fisher, 13 Wall. 335; Randall v. Brigham, 7 Wall. 523.  Whatever may have been the Spanish law, this is a principle so deep-seated in our system that we should regard it as carried into the Philippines by implication as soon as we established courts in those islands.  Acts of Philippine Commission Nos. 136, 222.  Act of Congress of July 1, 1902, c. 1369; §§ 1, 5, 32 Stat. 691, 693.  Reasons somewhat analogous to those adverted to in Carrington v. United States, 208 U.S. 1, 7, make the rule perhaps more important in the Philippines than it is here.  It is true that, in Act No.190, § 9, of the Philippine Commission (1901), it is provided that no judge, justice of the peace, or assessor shall be liable to a civil action for the recovery of damages by reason of any judicial action or judgment rendered by him in good faith, and within the limits of his legal powers and jurisdiction, and it is argued that this imports that any judge shall be liable for a judgment rendered in bad faith.  But, without considering the question of power, we are of opinion, for the reasons to which we have referred, that this should not be construed to convey such an implication, at least as to judges of the supreme court.  The section is shown to have had in mind inferior judges and the like by its mention of justices of the peace and assessors, as to whom a different rule has been held to prevail."

33. Plaintiff moved on founded principle of established civil law, statutes and of the principles of the Constitution of the United States; and Rules, Motion(s) under Rule 27 of the U.S. Court of Appeals.

34. Plaintiff, Michael Charles Pilot, Citizen in and of the United States brings this action to enforce his constitutional, Rights, Privileges and Immunities, First, Fifth due process and Fourteenth Amendment.

35. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is being held under pursuant to 22 U.S. C. Section 1732 , the President of the United States and The Hostage Act, passed in 1868. See **UNITED STATES   vs. UNITED STATES OF AMERICA**. "The original United States of America, mentioned in the Preamble and Article II of the U.S. Constitution, was created by the Articles of Confederation; the Constitution of the United States, which was named as such by the first Congress in 1789, creates and vests authority in Government of the United States, i.e.,

the United States. It does not bestow any particularly authority other than electing the president on the United States of America. Once the President of the United States of America is elected, he then takes the oath of office to become President of the United States."

A. The maddening word game is somewhat like figuring out which thimble the con artist's pea is under. In Article II(a) of the Uniform Detainers Act, which has been adopted on behalf of the United States by Congress and legislatures in most States of the Union, we find that the United States of America is foreign to most States: "(a) 'State' shall mean a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico."

B. The congressional act on behalf of the United States, as distinguished from the United States of America, preserves the foreign jurisdiction definition found in Article II(a) of the uniform act adopted by each State of the Union. The United States of America is defined as a foreign state – foreign to States of the Union, and where Congress adopted the act on behalf of the United States without alteration, foreign to the United States as well. It is clear from the 28 CFR § 96b delegation to the Director of the Bureau of Prisons that the United States and the United States of America are two distinct entities and that custody of United States of America prisoners can be transferred to United States custody, but the delegation doesn't come into clear focus until it is understood in the context of treaties and executive agreements.

C. United States and the United States of America are two distinct entities and that custody of United States of America prisoners can be transferred to United States custody, but the delegation doesn't come into clear focus until it is understood in the context of treaties and executive agreements. ARGUMENT of Plaintiff, Michael Charles Pilot is proper and requests for relief is proper under 22 U.S. C. Section 1732  The Hostage Act, passed in 1868 and the President of the United States Donald J. Trump President of the United States.

D. **The first Code section I presented was 28 U.S.C. § 1366. I used it because it distinguishes between "laws of the United States" and "Acts of Congress."**

36. NOTE - - - ARGUMENT - - - The second structural limitation is the complex set of procedures that Congress and the President must follow to enact "Laws of the United States." See INS v. Chadha, 462 U.S. 919, 945-946 (1983) (setting forth the Constitution's Bicameral and Presentment Clauses, Art. I, §7, cls. 2-3, which "prescribe and define the respective functions of the Congress and of the Executive in the legislative process"). "[T]he Framers were acutely conscious that the bicameral requirement and the Presentment Clauses would serve essential constitutional functions," Chadha, 462 U.S., at 951, by allowing the passage of legislation only after it has proceeded through "a step-by-step, deliberate and deliberative process," id., at 959, that was "finely wrought and exhaustively considered" by the Framers, id., at 951. The Supremacy Clause thus requires that pre-emptive effect be given only those to federal standards and policies that are set forth in, or necessarily follow from, the statutory text that was produced through the constitutionally required bicameral and presentment procedures. See 3 J. Story §1831, at 694 (Actions of the Federal Government "which are not pursuant to its constitutional powers, but which are invasions of the residuary authorities of the smaller societies," are not "the supreme law of the land. They will be merely acts of usurpation, and will deserve to be treated as such").

37. **Rev. Stat. § 2001, 22 U.S.C. § 1732.**

A."We are reluctant to conclude that this provision constitutes specific authorization to the President to suspend claims in American courts. Although the broad language of the Hostage Act suggests it may cover this case, there are several difficulties with such a view. The legislative history indicates that the Act was passed in response to a situation unlike the recent Iranian crisis. Congress in 1868 was concerned with the activity of certain countries refusing to recognize the citizenship of naturalized Americans traveling abroad and repatriating such citizens against their will. See, e.g., Cong.Globe, 40th Cong., 2d Sess., 4331 (1868) (Sen. Fessenden); id. at 4354 (Sen. Conness); see also 22 U.S.C. § 1731. These countries were not interested in returning the citizens in exchange for any sort of ransom. This also explains the reference in the Act to imprisonment "in violation of the rights of American citizenship." Although the Iranian hostage-taking violated international law and common decency, [453 U.S. 677] the hostages were not seized out of any refusal to recognize their American citizenship -- they were seized precisely because of their American citizenship. The legislative history is also somewhat ambiguous on the question whether

Congress contemplated Presidential action such as that involved here, or rather simply reprisals directed against the offending foreign country and its citizens. See, e.g., Cong.Globe, 40th Cong., 2d Sess., 4205 (1868); American Int'l Group, Inc. v. Islamic Republic of Iran, supra, at 490-491, 657 F.2d at 452-453 (opinion of Mikva, J.)."

B. "Concluding that neither the IEEPA nor the Hostage Act constitutes specific authorization of the President's action suspending claims, however, is not to say that these statutory provisions are entirely irrelevant to the question of the validity of the President's action. We think both statutes highly relevant in the looser sense of indicating congressional acceptance of a broad scope for executive action in circumstances such as those presented in this case. As noted in Part III, supra, at 670-672, the IEEPA delegates broad authority to the President to act in times of national emergency with respect to property of a foreign country. The Hostage Act similarly indicates congressional willingness that the President have broad discretion when responding to the hostile acts of foreign sovereigns. As Senator Williams, draftsman of the language eventually enacted as the Hostage Act, put it:"

C. "If you propose any remedy at all, you must invest the Executive with some discretion, so that he may apply the remedy to a case as it may arise. As to England or France, he might adopt one policy to relieve a citizen imprisoned by either one of those countries; as to the Barbary powers, he might adopt another policy; as to the islands of the ocean, another. With different countries that have different systems of government, he might adopt different means."

D. "Cong. Globe, 40th Cong., 2d Sess., 4359 (1868). [453 U.S. 678] Proponents of the bill recognized that it placed a "loose discretion" in the President's hands, id. at 4238 (Sen. Stewart), but argued that "[s]omething must be intrusted to the Executive," and that "[t]he President ought to have the power to do what the exigencies of the case require to rescue [a] citizen from imprisonment." Id. at 4233, 4357 (Sen. Williams). An original version of the Act, which authorized the President to suspend trade with a foreign country and even arrest citizens of that country in the United States in retaliation, was rejected because there may be a great variety of cases arising where other and different means would be equally effective, and where the end desired could be accomplished without resorting to such dangerous and violent measures."

E. **NOTE   - - - ARGUMENT** - --   S. Rep. No. 9566, p. 6 (1977); 50 U.S.C. §

1706(a)(1) (1976 ed., Supp. III).

F. "In addition to congressional acquiescence in the President's power to settle claims, prior cases of this Court have also recognized that the President does have some measure of power to enter into executive agreements without obtaining the advice and consent of the Senate.  In United States v. Pink, 315 U.S. 203 (1942), for example, the Court upheld the validity of the Litvinov Assignment, which was part of an Executive Agreement whereby the Soviet Union assigned to the United States amounts owed to it by American nationals so that outstanding claims of other American nationals could [453 U.S. 683] be paid.  The Court explained that the resolution of such claims was integrally connected with normalizing United States' relations with a foreign state:"

G. **ARGUMENT** - - - SEE - - - Free Enterprise Fund v. Public Company Accounting Oversight Bd., 561 U.S. ____ (2010)

"Our Constitution divided the "powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." INS v. Chadha, 462 U.S. 919, 951 (1983). Article II vests "[t]he executive Power... in a President of the United States of America," who must "take Care that the Laws be faithfully executed." Art. II, §1, cl. 1; id., §3. In light of "[t]he impossibility that one man should be able to perform all the great business of the State," the Constitution provides for executive officers to "assist the supreme Magistrate in discharging the duties of his trust." 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)."

H. "The United States concedes that some constraints on the removal of inferior executive officers might violate the Constitution. See Brief for United States 47. It contends, however, that the removal restrictions at issue here do not."

I. "Since 1789, the Constitution has been understood to empower the President to keep these officers account able-by removing them from office, if necessary. See generally Myers v. United States, 272 U.S. 52 (1926). This Court has determined, however, that this authority is not without limit. In Humphrey's Executor v. United States, 295 U.S. 602 (1935), we held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause. Likewise, in United States v. Perkins, 116 U.S. 483 (1886), and Morrison v. Olson, 487 U.S. 654 (1988), the Court sustained similar restrictions on the power of principal executive officers-themselves

responsible to the President-to remove their own inferiors. The parties do not ask us to reexamine any of these precedents, and we do not do so."

   J. "We are asked, however, to consider a new situation not yet encountered by the Court. The question is whether these separate layers of protection may be combined. May the President be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States?"

   K. "We hold that such multilevel protection from removal is contrary to Article II's vesting of the executive power in the President. The President cannot "take Care that the Laws be faithfully executed" if he cannot oversee the faithfulness of the officers who execute them. Here the President cannot remove an officer who enjoys more than one level of good-cause protection, even if the President determines that the officer is neglecting his duties or discharging them improperly. That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This contravenes the President's "constitutional obligation to ensure the faithful execution of the laws." Id., at 693."

   L. "After a series of celebrated accounting debacles, Congress enacted the Sarbanes-Oxley Act of 2002 (or Act), 116 Stat. 745. Among other measures, the Act introduced tighter regulation of the accounting industry under a new Public Company Accounting Oversight Board. The Board is composed of five members, appointed to staggered 5 year terms by the Securities and Exchange Commission. It was modeled on private self-regulatory organizations in the securities industry-such as the New York Stock Exchange-that investigate and discipline their own members subject to Commission oversight. Congress created the Board as a private "nonprofit corporation," and Board members and employees are not considered Government "officer[s] or employee[s]" for statutory purposes. 15 U.S.C. §§7211(a), (b). The Board can thus recruit its members and employees from the private sector by paying salaries far above the standard Government pay scale." See §§7211(f)(4), 7219. fn. 1

   M. "Unlike the self-regulatory organizations, however, the Board is a Government-created, Government-appointed entity, with expansive powers to govern an entire

industry. Every accounting firm-both foreign and domestic- that participates in auditing public companies under the securities laws must register with the Board, pay it an annual fee, and comply with its rules and oversight. §§7211(a), 7212(a), (f), 7213, 7216(a)(1). The Board is charged with enforcing the Sarbanes-Oxley Act, the securities laws, the Commission's rules, its own rules, and professional accounting standards. §§7215(b)(1), (c)(4). To this end, the Board may regulate every detail of an accounting firm's practice, including hiring and professional development, promotion, supervision of audit work, the acceptance of new business and the continuation of old, internal inspection procedures, professional ethics rules, and "such other requirements as the Board may pre scribe." §72 13(a)(2)(B).

 N. "No one doubts Congress's power to create a vast and varied federal bureaucracy. But where, in all this, is the role for oversight by an elected President? The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws. And the "'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,'" for "'[c]onvenience and efficiency are not the primary objectives-or the hallmarks-of democratic government.'" Bowsher, 478 U.S., at 736 (quoting Chadha, 462 U.S., at 944).

 O. "One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. Our Constitution was adopted to enable the people to govern themselves, through their elected leaders. The growth of the Executive Branch, which now wields vast power and touches almost every aspect of daily life, heightens the concern that it may slip from the Executive's control, and thus from that of the people. This concern is largely absent from the dissent's paean to the administrative state."

 P. "For example, the dissent dismisses the importance of removal as a tool of supervision, concluding that the President's "power to get something done" more often depends on "who controls the agency's budget requests and funding, the relationships between one agency or department and another,... purely political factors (including Congress' ability to assert influence)," and indeed whether particular unelected officials support or "resist" the President's policies. Post, at 11, 13 (emphasis deleted). The Framers did not rest our liberties on such bureaucratic minutiae. As we said in Bowsher, supra, at 730, "[t]he separated powers of our Government cannot be

permitted to turn on judicial assessment of whether an officer exercising executive power is on good terms with Congress."

Q. "In fact, the multilevel protection that the dissent endorses "provides a blueprint for extensive expansion of the legislative power." MWAA, supra, at 277. In a system of checks and balances, "[p]ower abhors a vacuum," and one branch's handicap is another's strength. 537 F. 3d, at 695, n. 4 (Kavanaugh, J., dissenting) (internal quotation marks omitted). "Even when a branch does not arrogate power to itself," therefore, it must not "impair another in the performance of its constitutional duties." Loving v. United States, 517 U.S. 748, 757 (1996). fn. 5 Congress has plenary control over the salary, duties, and even existence of executive offices. Only Presidential oversight can counter its influence. That is why the Constitution vests certain powers in the President that "the Legislature has no right to diminish or modify." 1 Annals of Cong., at 463 (J. Madison)." fn. 6

R. "The Framers created a structure in which "[a] dependence on the people" would be the "primary controul on the government." The Federalist No. 51, at 349 (J. Madison). That dependence is maintained, not just by "parchment barriers," id., No. 48, at 333 (same), but by letting "[a]mbition... counteract ambition," giving each branch "the necessary constitutional means, and personal motives, to resist encroachments of the others," id., No. 51, at 349. A key "constitutional means" vested in the President-perhaps the key means-was "the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong., at 463. And while a government of "opposite and rival interests" may sometimes inhibit the smooth functioning of administration, The Federalist No. 51, at 349, "[t]he Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." Bowsher, supra, at 730.

S. "Calls to abandon those protections in light of "the era's perceived necessity," New York, 505 U.S., at 187, are not unusual. Nor is the argument from bureaucratic expertise limited only to the field of accounting. The failures of accounting regulation may be a "pressing national problem," but "a judiciary that licensed extraconstitutional government with each issue of comparable gravity would, in the long run, be far worse." Id., at 187-188. Neither respondents nor the dissent explains why the Board's task, unlike so many others, requires more than one layer of insulation from the President-or, for that matter, why only two. The point is not to take issue with for-cause limitations in general; we do not do that. The question here is far more modest. We deal

with the unusual situation, never before addressed by the Court, of two layers of for-cause tenure. And though it may be criticized as "elementary arithmetical logic," post, at 23, two layers are not the same as one."

T. "The President has been given the power to oversee executive officers; he is not limited, as in Harry Truman's lament, to "persuad[ing]" his unelected subordinates "to do what they ought to do without persuasion." Post, at 11 (internal quotation marks omitted). In its pursuit of a "workable government," Congress cannot reduce the Chief Magistrate to a cajoler-in-chief.

U. **The United States concedes that some constraints on the removal of inferior executive officers might violate the Constitution. See Brief for United States 47. It contends, however, that the removal restrictions at issue here do not."**

V. "To begin with, the Government argues that the Commission's removal power over the Board is "broad," and could be construed as broader still, if necessary to avoid invalidation. See, e.g., id., at 51, and n. 19; cf. PCAOB Brief 22-23. But the Government does not contend that simple disagreement with the Board's policies or priorities could constitute "good cause" for its removal. See Tr. of Oral Arg. 4 1-43, 45-46. Nor do our precedents suggest as much. Humphrey's Executor, for example, rejected a removal premised on a lack of agreement "'on either the policies or the administering of the Federal Trade Com mission,'" because the FTC was designed to be "'independent in character,'" "free from 'political domination or control,'" and not "'subject to anybody in the government'" or "'to the orders of the President.'" 295 U.S., at 619, 625. Accord, Morrison, 487 U.S., at 693 (noting that "the congressional determination to limit the removal power of the Attorney General was essential... to establish the necessary independence of the office"); Wiener v. United States, 357 U.S. 349, 356 (1958) (describing for-cause removal as "involving the rectitude" of an officer). And here there is judicial review of any effort to remove Board members, see 15 U.S.C. §78y(a)(1), so the Commission will not have the final word on the propriety of its own removal orders. The removal restrictions set forth in the statute mean what they say."

W. "Indeed, this case presents an even more serious threat to executive control than an "ordinary" dual for-cause standard. Congress enacted an unusually high standard that must be met before Board members may be removed. A Board member cannot be removed except for willful violations of the Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable

failure to en force compliance-as determined in a formal Commission order, rendered on the record and after notice and an opportunity for a hearing. §7217(d)(3); see §78y(a). The Act does not even give the Commission power to fire Board members for violations of other laws that do not relate to the Act, the securities laws, or the Board's authority. The President might have less than full confidence in, say, a Board member who cheats on his taxes; but that discovery is not listed among the grounds for removal under §72 17(d)(3)." fn. 7

38. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is being held under and pursuant to 22 U.S. C. Section 1732 , the President of the United States and The Hostage Act, passed in 1868, of the inaction of the United States District and Circuit Court in the District of Columbia; ORDERS of the Court are to be signed the Judges in the matters before the Court.

A. Plaintiff, Michael Charles Pilot, Citizen in and of the United States alleges violation of his First, Fifth amendment guaranteeing to all Citizen freedom to be left alone, Right of assembly, Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the [506 U.S. 436] government from engaging in conduct that "shocks the conscience," Rochin v. California, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325-326 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as "procedural" due process and the Right to Petition for redress of the grievances of the requested relief."

39. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is restricted to take an appeal without Order(s) by the presiding judges. Clerks of the Court are "NOT" parties to these action and lack(s) authority the sign ORDER of the Court.

40. Plaintiff, Michael Charles Pilot, Citizen in and of the United States - - - says the actions of the District and Circuit Court, the actions of the Judges and clerks of the court acting in their official capacity "shocks the conscience" of plaintiff Michael Charles Pilot.

# PARTIES

41. Plaintiff, Michael Charles Pilot, Citizen in and of the United States, see definitions - Name; Praenomen, Agnomen, Cognomen), lives in Michigan state, as his principle domicile at 14098 Marshall Ave, Warren, Michigan in the County of Macomb, Michigan state, (Republic of Michigan) as a federal Citizen pursuant to the Northwest Ordinance of 1787, an Act of Congress, July 13, 1787, of the Northwest Territorial Government [Act], an Act of Congress, August 7, 1789, 1 U.S. Stat. Ch. VII, pp. 50-53; of an Act of Congress, May 8, 1792, 1 U.S. Stat. Ch. XLII, p. 285; of the Enabling Acts, an Act of Congress, June 15, 1836, 5 U.S. Stat. at Large 49; of the Act of Congress, June 23, 1836, 5 U.S. Stat. at Large 59; of Michigan ordinance Submitting Alternative of the Laws of 1836, p. 57; July 25, 1836; of Michigan Assent to Condition of Admission, on the fifteenth day of December, eighteen hundred and thirty-six; of that in the Union of the 48 states of the United States of America; of the Original 48 states of the Union of the United States [see **In re Hohost, 150 U.S. 653 at U.S. 654 (1893), the Revised Statutes, [150 U.S. 661] applied only to inhabitants of the United States, for its words were that no civil suit should be brought**]; under the Original Congress of the United States; of the Articles in addition to, and Amendment of the Constitution of the United States of America, proposed by Congress and ratified by the Legislatures of the several States, pursuant to the fifth Article of the Original Constitution.

42. Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

## STATEMENT OF JURISDICTION AND VENUE

43. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

A. 28 U.S.C. § 1331 - - - Federal Question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, or treaties of the United States.

Violation of the Administrative procedure Act, 5 U. S. C. § 706 , see Adm. Procedure Act. 5 U.S.C.A. § 551.

B. The First, Fifth and Fourteenth Amendments are arising under the Constitution, of the United States and Acts of the Congress of the United States.

C. 22 U.S. C. SECTION 1732. Hostage Act, passed in 1868 is an Act of the Congress

of the United States.

44. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) and (e)(1). A substantial part of "ALL" events giving rise to these claims occurred in this District, Defendant Donald J. Trump is officer of the United States sued in his official capacity as President of the United States is sued for relief under the **Hostage Act, passed in 1868, 22 U. S. C. SECTION 1732.**

A. "Whenever it is made known to the President that any citizen of the United States has been unjustly deprived of his liberty by or under the authority of any foreign government, it shall be the duty of the President forthwith to demand of that government the reasons of such imprisonment; and if it appears to be wrongful and in violation of the rights of American citizenship, the President shall forthwith demand the release of such citizen, and if the release so demanded is unreasonably delayed or refused, the President shall use such means, not amounting to acts of war, as he may think necessary and proper to obtain or effectuate the release; and all the facts and proceedings relative thereto shall as soon as practicable be communicated by the President to Congress." **Rev. Stat. § 2001, 22 U.S.C. § 1732.**

B. "We are reluctant to conclude that this provision constitutes specific authorization to the President to suspend claims in American courts. Although the broad language of the Hostage Act suggests it may cover this case, there are several difficulties with such a view. The legislative history indicates that the Act was passed in response to a situation unlike the recent Iranian crisis. Congress in 1868 was concerned with the activity of certain countries refusing to recognize the citizenship of naturalized Americans traveling abroad and repatriating such citizens against their will. See, e.g., Cong. Globe, 40th Cong., 2d Sess., 4331 (1868) (Sen. Fessenden); id. at 4354 (Sen. Conness); see also 22 U.S.C. § 1731. These countries were not interested in returning the citizens in exchange for any sort of ransom. This also explains the reference in the Act to imprisonment "in violation of the rights of American citizenship." Although the Iranian hostage-taking violated international law and common decency, [453 U.S. 677] the hostages were not seized out of any refusal to recognize their American citizenship -- they were seized precisely because of their American citizenship. The legislative history is also somewhat ambiguous on the question whether Congress contemplated Presidential action such as that involved here, or rather simply reprisals

directed against the offending foreign country and its citizens.  See, e.g., Cong. Globe, 40th Cong., 2d Sess., 4205 (1868); American Int'l Group, Inc. v. Islamic Republic of Iran, supra, at 490-491, 657 F.2d at 452-453 (opinion of Mikva, J.)."

# FACTS

45. Plaintiff, Citizen in and of the United States - - - Restates the Introduction as Facts - - - in support of this Action for relief under 22 U.S. C. SECTION 1732  - -- Plaintiff is being held as Hostage by and through the action - - - enaction of the Clerks of the Court, and the Courts failure to follow established Law - -- Judges  - - - to - - - be signers of ORDERS.

46. Plaintiff, Michael Charles Pilot is a Citizen in and of the United States living in the United States, having the creditable as a Citizen to bring this action for relief under the statutes of the United States/United States of America as the damaged Citizen.

47. On Plaintiff filed suit against -Colleen Kollar-Kotelly and the additional named defendants in UNITED STATES DISTRICT COURT for the District of Columbia     Division. JURISDICTION AND INTRODUCTION OF PARTIES,1. This action arises under 42 USC section 1983; citing several statutes for relief for judicial economy.

48. On this action - - - Damages to Counts - -1 through 10 MEMORANDUM OPINION AND TRANSFER ORDER dated May 23, 2017 elect- - - signature by COLLEENKOLLAR-KOTELLY - - - United States District Judge.

49. Upon information and belief  Defendant  - - 2 - Jeff Sessions, United States Attorney Officially, of the United States Department of Justice,  is located at The Department of Justice, 950.

50. Jeff Sessions, United States Attorney is named because of the allegation that Colleen Kollar-Kotelly, as being sued as an individual acting under the color of law as  United States District Judge, Colleen Kollar-Kotelly. Is alleged to have violated the "WESTFALL-ACT" and request certification under - -- , 28 U.S.C. § 2679, and empowers the Attorney General to certify that a federal employee can be sued for wrongful or negligent conduct .

51. Jeff Sessions, United States Attorney is named in view of Osborn v. Haley, 549 U.S. 225 (2007) - - - The federal statute commonly known as the Westfall Act accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties, 28 U.S.C. § 2679(b)(1), and empowers the Attorney General to certify that a federal employee

sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," § 2679(d)(1), (2). Upon such certification, the United States is substituted as defendant in place of the employee, and the action is thereafter governed by the Federal Tort Claims Act. If the action commenced in state court, the Westfall Act calls for its removal to a federal district court, and renders the Attorney General's certification.

52. Plaintiff citing the Court - - - " The Westfall Act's command that a district court retain jurisdiction over a case removed pursuant to § 2679(d)(2) does not run afoul of Article III. An Article III question could arise in this case only if, [549 U.S. 228] after full consideration, the District Court determined that Haley engaged in tortious conduct outside the scope of his employment. Because, at that point, little would be left to adjudicate as to his liability, and because a significant federal question (whether he has Westfall Act immunity) would have been raised at the outset, the case would "aris[e] under" federal law as that term is used in Article III. Even if only state-law claims remained after resolution of the federal question, the District Court would have authority, consistent with Article III, to retain jurisdiction." Pp. 244-245.

" Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Attorney General concludes, that the incident or episode in suit never occurred." Pp. 245-253.

53. Defendant  - - 2 - Jeff Sessions, United States Attorney Officially, of the United States Department of Justice is "NOT being SUED for monetary Damages" and THEREFORE substation is "NOT" necessary when the Question is raised of did Colleen Kollar-Kotelly action in her Official Capacity violate her Constitutional and Federal Oath of Office in her action against Plaintiff-Petitioner, Michael Charles Pilot, Citizen of and in the United States as fully stated in his Cause of Action."

 54. Defendant - - - 3 - - Channing D. Phillips, United States Attorney for the District of Columbia Officially, United States Department of Justice.

55. Channing D. Phillips, United States Attorney's Office is located at 555, 4th Street, NW., Washington, DC  20530 - - - (202)-252-7566 is being sued because the alleged violations by Plaintiff-Petitioner, Michael Charles Pilot, Citizen in and of the United States took place in the District of Columbia, Washington in the Sovereign Maryland state in the united states for Venue and

Jurisdiction in the United States District Court for the District of Columbia, as the place where the act or omission occurred."

56. FURTHER - - - In the Event the United States moves for substitution of the United States will be treated as an individual subject to monetary damages as a Defendant. For injury or loss of property loss of personal injury, (a) Attorney Fees, (b) Mental anguish and emotional distress, (c) Humiliation (d) Fright and shock, (e) Loss of reputation, (f) Loss of personal income, (g) Loss of earning capacity  caused by the alleged misconduct of  by COLLEEN KOLLAR-KOTELLY acting under the color of statute as  - - - United States District Judge,  negligent or wrongful act or omission as any employee  while acting outside of her scope of her office, employment as United States Federal District Judge, under circumstances where the United States would be liable to the claimant in accordance with the law of the place where the act or omission occurred. subject to the exclusive jurisdiction of the United States, District Court for the District of Columbia. See - - - Section 2674, also relevant to our decision, provides: The United States shall be liable, respecting . . . tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

57. That an ORDER Establishing Procedure for Cases Assigned to Judge COLLEEN KOLLAR-KOTELL, Signed by Judge COLLEEN KOLLAR-KOTELL on May 22, 2017 (NS) (Entered: 05/22/2017).  - - - SEE Docket Entry - - - NR -3 - - - ATTACHED EXHIBIT - - - C - - - In Support.

58. That without notice and right to file his ( Michael Charles Pilot) Objections and Oppositions to United States District Judge COLLEEN KOLLAR-KOTELLY - - - ORDER denying the habeas petition and transferring the surviving civil case to the U.S. District Court for the Eastern District of Michigan (see written order for details). Signed by Judge COLLEENKOLLAR-KOTELLY on 5/23/2017 - - -- SEE docket entry - - - NR - 4 - -- ATTACHED EXHIBIT - - - D - -- In Support with copy of Judge COLLEEN KOLLAR-KOTELLY  - - - ORDER MEMORANDUM OPINION AND TRANSFER ORDER.

59. ATTACHMENT - --  without NR- Number- - - Case transferred to the U.S.D.C for the for the Eastern District of Michigan, pursuant to Court Order entered 5/23/ 2017 Sent to Court extraction (id) (Entered. 06/12/2017).

60. That  - - - NOTICE of Extraction of case transfer to U.S. District Court for Eastern District of Michigan (id) Entered: 06/12/2017. - -- SEE Docket Entry - - - NR. - 5  - - - ATTACHMENT EXHIBIT - - - E  - - - In Support.

61. ATTACHMENT - -- without NR- Number  - - - Received on 06/12/ 2017 of Electronic Transfer. Other Court Number 5:17-cv-11854 sent by U.S. District Court for the Eastern District of Michigan (zrdj) (Entered: 06/12/2017).

62. Plaintiff-Petitioner, Michael Charles Pilot at NR - -- 6 - - - LEAVE TO FILE DENIED - Plaintiff's Motion to reverse memorandum opinion and transfer order "Leave to file denied. Case was physically removed from this Court on 6/12/2017". This document is unviable as the Court denied its filing. Signed by Judge COLLEEN KOLLAR-KOTELLY on 6/14/17. (td) (entered: 06/16 2017), - - - SEE Docker Entry - - - NR.- 6 - - - ATTACHED EXHIBIT - -- F - - - In Support.

63. Argument of  Judge COLLEEN KOLLAR-KOTELLY'S actions to this document is unavailable  - -- SEE - - - **Title 18 § 1512.** "Tampering with a witness, victim, or an informant"(b);

"Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to —

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to —

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; shall be fined under this title or imprisoned not more than ten years, or both."

64. Entire proceeding can be found on PACER at Civil Case Number - - - Civil Action in the United States District and Court of Appeals for the District of Columbia.

65. Plaintiff raised several arguments in support of this cause of action including brief in support with case law in support of this cause of action.

66. Michael Charles Pilot, Appellant, moved on Appeal from the United States District Court for the District of Columbia Civil Case No. 1:17-cv-01337-CRC - - -  OFFICIAL COURT APPEALS CAPTION is Challenged - -- Contested use of et.,al is signed and dated under Protest to the Official Caption

67. Plaintiff filed Appeal in the United  States Court of Appeals for the District of Columbia, United States Courthouse, 333 Constitutional Avenue, NW Washington, DC 20001, REFERENCE -

- - NO. 17-5201 on Appeal District Court NO. 1:17-cv-01337-CRC.

68.  Plaintiff filed Motion complaining of signer of Pleading - - - FOR THE COURT: - - - Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk and moves for correction under Appellate Rules 3 and 4 to take an Appeal - - - Objections and Opposition; (1.) Application for Relief - -- - to have Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge to sign - - - "ORDER" - -- "Upon consideration of petition for rehearing, it is ORDERED that the petition be denied." Per Curiam with Rule 11 Sanctions - - - signer of Pleading - - - FOR THE COURT: - - - Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk and moves for correction under Appellate Rules 3 and 4 to take an Appeal - - - Objections and Opposition - - -

69. That it should be noted that R. Craig Lawrence, Attorney for Defendants, U.S. Attorney's Office, (USC) Civil Division, 555 4th Street, NW, Washington, DC 20530, FIRM, 202-252-2500 filed his appearance on behalf of the Defendants- Appellees as the record of this Court - - - United States Court of Appeals, For the District of Columbia Circuit will reflect.

70. Note "NO" mention of Mark J. Langer, Clerk - --- FOR THE COURT and Ken Meadows Deputy Clerk to be signers for  Attorney for Defendants, U.S. Attorney's Office, (USC) Civil Division, 555 4th Street, NW, Washington, DC 20530,FIRM, 202-252-2500 - - - or - - - Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge as signers.

71. The signature of the named Judges protects, was justified under the statutes of the United States of America.

72. Appellant, Michael Charles Pilot in the taking of an Appeal of the ORDER - - - Attached Filed on: March 9, 2018.

73. Plaintiff, Michael Charles Pilot's The Court - - -"Judges of United States courts are not liable to civil actions for their judicial acts." see  Bradley v. Fisher, 13 Wall. 335. - - - The immunity of judges of the Supreme Court of the Philippine Islands from civil action for official acts is the same as that of judges of the United States."

74. "Act No.190 of the Philippine Commission did not impose any liability to civil actions for official acts on any judge of the Supreme Court of the Philippine Islands; that act related only to inferior judges."

75. "A statute such as that involved in this case, providing that no judge shall be liable to

civil action for official acts done in good faith, will not be construed as rendering such judges liable to civil action for acts done in bad faith by implication."

A. Plaintiff, Pilot's action was to establish liability acting in bad faith, to justify appeal and sanctions.

76. Citing the court - - -"Quaere whether the Philippine Commission has power to enact legislation making any judge liable to civil action for official acts." - - -    21 Phil. 308 affirmed."

77. The Court - - - "But, however it may be as to the matters that we have stated, we regard it as fundamental that the immunity of the defendant from this suit is the same as that of judges in the United States, which is established beyond dispute.  Bradley v. Fisher, 13 Wall. 335; Randall v. Brigham, 7 Wall. 523.  Whatever may have been the Spanish law, this is a principle so deep-seated in our system that we should regard it as carried into the Philippines by implication as soon as we established courts in those islands.  Acts of Philippine Commission Nos. 136, 222.  Act of Congress of July 1, 1902, c. 1369; §§ 1, 5, 32 Stat. 691, 693.  Reasons somewhat analogous to those adverted to in Carrington v. United States, 208 U.S. 1, 7, make the rule perhaps more important in the Philippines than it is here.  It is true that, in Act No.190, § 9, of the Philippine Commission (1901), it is provided that no judge, justice of the peace, or assessor shall be liable to a civil action for the recovery of damages by reason of any judicial action or judgment rendered by him in good faith, and within the limits of his legal powers and jurisdiction, and it is argued that this imports that any judge shall be liable for a judgment rendered in bad faith.  But, without considering the question of power, we are of opinion, for the reasons to which we have referred, that this should not be construed to convey such an implication, at least as to judges of the supreme court.  The section is shown to have had in mind inferior judges and the like by its mention of justices of the peace and assessors, as to whom a different rule has been held to prevail."

78. Plaintiff moved on founded principle of established civil law, statutes and of the principles of the Constitution of the United States; and Rules, Motion(s) under Rule 27 of the U.S. Court of Appeals.

79. Plaintiff, Michael Charles Pilot, Citizen in and of the United States brings this action to enforce his constitutional, Rights, Privileges and Immunities, First, Fifth due process and Fourteenth Amendment.

80. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is being held under pursuant to 22 U.S.C. Section 1732 , the President of the United States and The Hostage Act, passed in 1868.

81. NOTE - - - ARGUMENT - - - The second structural limitation is the complex set of procedures that Congress and the President must follow to enact "Laws of the United States." See INS v. Chadha, 462 U.S. 919, 945-946 (1983) (setting forth the Constitution's Bicameral and Presentment Clauses, Art. I, §7, cls. 2-3, which "prescribe and define the respective functions of the Congress and of the Executive in the legislative process"). "[T]he Framers were acutely conscious that the bicameral requirement and the Presentment Clauses would serve essential constitutional functions," Chadha, 462 U.S., at 951, by allowing the passage of legislation only after it has proceeded through "a step-by-step, deliberate and deliberative process," id., at 959, that was "finely wrought and exhaustively considered" by the Framers, id., at 951. The Supremacy Clause thus requires that pre-emptive effect be given only those to federal standards and policies that are set forth in, or necessarily follow from, the statutory text that was produced through the constitutionally required bicameral and presentment procedures. See 3 J. Story §1831, at 694 (Actions of the Federal Government "which are not pursuant to its constitutional powers, but which are invasions of the residuary authorities of the smaller societies," are not "the supreme law of the land. They will be merely acts of usurpation, and will deserve to be treated as such").

82. **Rev. Stat. § 2001, 22 U.S.C. § 1732.**

A."We are reluctant to conclude that this provision constitutes specific authorization to the President to suspend claims in American courts.  Although the broad language of the Hostage Act suggests it may cover this case, there are several difficulties with such a view.  The legislative history indicates that the Act was passed in response to a situation unlike the recent Iranian crisis.  Congress in 1868 was concerned with the activity of certain countries refusing to recognize the citizenship of naturalized Americans traveling abroad and repatriating such citizens against their will.  See, e.g., Cong.Globe, 40th Cong., 2d Sess., 4331 (1868) (Sen. Fessenden); id. at 4354 (Sen. Conness); see also 22 U.S.C. § 1731.  These countries were not interested in returning the citizens in exchange for any sort of ransom.  This also explains the reference in the Act to imprisonment "in violation of the rights of American citizenship."  Although the Iranian hostage-taking violated

international law and common decency, [453 U.S. 677] the hostages were not seized out of any refusal to recognize their American citizenship -- they were seized precisely because of their American citizenship.  The legislative history is also somewhat ambiguous on the question whether Congress contemplated Presidential action such as that involved here, or rather simply reprisals directed against the offending foreign country and its citizens.  See, e.g., Cong.Globe, 40th Cong., 2d Sess., 4205 (1868); American Int'l Group, Inc. v. Islamic Republic of Iran, supra, at 490-491, 657 F.2d at 452-453 (opinion of Mikva, J.)."

      B. "Concluding that neither the IEEPA nor the Hostage Act constitutes specific authorization of the President's action suspending claims, however, is not to say that these statutory provisions are entirely irrelevant to the question of the validity of the President's action.  We think both statutes highly relevant in the looser sense of indicating congressional acceptance of a broad scope for executive action in circumstances such as those presented in this case.  As noted in Part III, supra, at 670-672, the IEEPA delegates broad authority to the President to act in times of national emergency with respect to property of a foreign country.  The Hostage Act similarly indicates congressional willingness that the President have broad discretion when responding to the hostile acts of foreign sovereigns.  As Senator Williams, draftsman of the language eventually enacted as the Hostage Act, put it:"

      C. "If you propose any remedy at all, you must invest the Executive with some discretion, so that he may apply the remedy to a case as it may arise.  As to England or France, he might adopt one policy to relieve a citizen imprisoned by either one of those countries; as to the Barbary powers, he might adopt another policy; as to the islands of the ocean, another.  With different countries that have different systems of government, he might adopt different means."

      D. "Cong. Globe, 40th Cong., 2d Sess., 4359 (1868).  [453 U.S. 678] Proponents of the bill recognized that it placed a "loose discretion" in the President's hands, id. at 4238 (Sen. Stewart), but argued that "[s]omething must be intrusted to the Executive," and that "[t]he President ought to have the power to do what the exigencies of the case require to rescue [a] citizen from imprisonment." Id. at 4233, 4357 (Sen. Williams).  An original version of the Act, which authorized the President to suspend trade with a foreign country and even arrest citizens of that country in the United States in retaliation, was rejected because there may be a great variety of cases arising where

other and different means would be equally effective, and where the end desired could be accomplished without resorting to such dangerous and violent measures."

E. **NOTE  - - - ARGUMENT** - -- S. Rep. No. 9566, p. 6 (1977); 50 U.S.C. § 1706(a)(1) (1976 ed., Supp. III).

F. "In addition to congressional acquiescence in the President's power to settle claims, prior cases of this Court have also recognized that the President does have some measure of power to enter into executive agreements without obtaining the advice and consent of the Senate.  In United States v. Pink, 315 U.S. 203 (1942), for example, the Court upheld the validity of the Litvinov Assignment, which was part of an Executive Agreement whereby the Soviet Union assigned to the United States amounts owed to it by American nationals so that outstanding claims of other American nationals could [453 U.S. 683] be paid.  The Court explained that the resolution of such claims was integrally connected with normalizing United States' relations with a foreign state:"

G. **ARGUMENT** - - - SEE - - - Free Enterprise Fund v. Public Company Accounting Oversight Bd., 561 U.S. ____ (2010)

"Our Constitution divided the "powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." INS v. Chadha, 462 U.S. 919, 951 (1983). Article II vests "[t]he executive Power... in a President of the United States of America," who must "take Care that the Laws be faithfully executed." Art. II, §1, cl. 1; id., §3. In light of "[t]he impossibility that one man should be able to perform all the great business of the State," the Constitution provides for executive officers to "assist the supreme Magistrate in discharging the duties of his trust." 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)."

H. "The United States concedes that some constraints on the removal of inferior executive officers might violate the Constitution. See Brief for United States 47. It contends, however, that the removal restrictions at issue here do not."

I. "Since 1789, the Constitution has been understood to empower the President to keep these officers account able-by removing them from office, if necessary. See generally Myers v. United States, 272 U.S. 52 (1926). This Court has determined, however, that this authority is not without limit. In Humphrey's Executor v. United States, 295 U.S. 602 (1935), we held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed

by the President, whom the President may not remove at will but only for good cause. Likewise, in United States v. Perkins, 116 U.S. 483 (1886), and Morrison v. Olson, 487 U.S. 654 (1988), the Court sustained similar restrictions on the power of principal executive officers-themselves responsible to the President-to remove their own inferiors. The parties do not ask us to reexamine any of these precedents, and we do not do so."

      J. "We are asked, however, to consider a new situation not yet encountered by the Court. The question is whether these separate layers of protection may be combined. May the President be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States?"

      K. "We hold that such multilevel protection from removal is contrary to Article II's vesting of the executive power in the President. The President cannot "take Care that the Laws be faithfully executed" if he cannot oversee the faithfulness of the officers who execute them. Here the President cannot remove an officer who enjoys more than one level of good-cause protection, even if the President determines that the officer is neglecting his duties or discharging them improperly. That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This contravenes the President's "constitutional obligation to ensure the faithful execution of the laws." Id., at 693."

      L. "After a series of celebrated accounting debacles, Congress enacted the Sarbanes-Oxley Act of 2002 (or Act), 116 Stat. 745. Among other measures, the Act introduced tighter regulation of the accounting industry under a new Public Company Accounting Oversight Board. The Board is composed of five members, appointed to staggered 5 year terms by the Securities and Exchange Commission. It was modeled on private self-regulatory organizations in the securities industry-such as the New York Stock Exchange-that investigate and discipline their own members subject to Commission oversight. Congress created the Board as a private "nonprofit corporation," and Board members and employees are not considered Government "officer[s] or employee[s]" for statutory purposes. 15 U.S.C. §§7211(a), (b). The Board can thus recruit its members and employees from the private sector by paying salaries far above the standard

Government pay scale." See §§7211(f)(4), 7219. fn. 1

   M. "Unlike the self-regulatory organizations, however, the Board is a Government-created, Government-appointed entity, with expansive powers to govern an entire industry. Every accounting firm-both foreign and domestic- that participates in auditing public companies under the securities laws must register with the Board, pay it an annual fee, and comply with its rules and oversight. §§7211(a), 7212(a), (f), 7213, 7216(a)(1). The Board is charged with enforcing the Sarbanes-Oxley Act, the securities laws, the Commission's rules, its own rules, and professional accounting standards. §§7215(b)(1), (c)(4). To this end, the Board may regulate every detail of an ac counting firm's practice, including hiring and professional development, promotion, supervision of audit work, the acceptance of new business and the continuation of old, internal inspection procedures, professional ethics rules, and "such other requirements as the Board may pre scribe." §72 13(a)(2)(B).

   N. "No one doubts Congress's power to create a vast and varied federal bureaucracy. But where, in all this, is the role for oversight by an elected President? The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws. And the "'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,'" for "'[c]onvenience and efficiency are not the primary objectives-or the hallmarks-of democratic government.'" Bowsher, 478 U.S., at 736 (quoting Chadha, 462 U.S., at 944).

   O. "One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. Our Constitution was adopted to enable the people to govern themselves, through their elected leaders. The growth of the Executive Branch, which now wields vast power and touches almost every aspect of daily life, heightens the concern that it may slip from the Executive's control, and thus from that of the people. This concern is largely absent from the dissent's paean to the administrative state."

   P. "For example, the dissent dismisses the importance of removal as a tool of supervision, concluding that the President's "power to get something done" more often depends on "who controls the agency's budget requests and funding, the relationships between one agency or department and another,... purely political factors (including Congress' ability to assert influence),"

and indeed whether particular unelected officials support or "resist" the President's policies. Post, at 11, 13 (emphasis deleted). The Framers did not rest our liberties on such bureaucratic minutiae. As we said in Bowsher, supra, at 730, "[t]he separated powers of our Government cannot be permitted to turn on judicial assessment of whether an officer exercising executive power is on good terms with Congress."

Q. "In fact, the multilevel protection that the dissent endorses "provides a blueprint for extensive expansion of the legislative power." MWAA, supra, at 277. In a system of checks and balances, "[p]ower abhors a vacuum," and one branch's handicap is another's strength. 537 F. 3d, at 695, n. 4 (Kavanaugh, J., dissenting) (internal quotation marks omitted). "Even when a branch does not arrogate power to itself," therefore, it must not "impair another in the performance of its constitutional duties." Loving v. United States, 517 U.S. 748, 757 (1996). fn. 5 Congress has plenary control over the salary, duties, and even existence of executive offices. Only Presidential oversight can counter its influence. That is why the Constitution vests certain powers in the President that "the Legislature has no right to diminish or modify." 1 Annals of Cong., at 463 (J. Madison)." fn. 6

R. "The Framers created a structure in which "[a] dependence on the people" would be the "primary controul on the government." The Federalist No. 51, at 349 (J. Madison). That dependence is maintained, not just by "parchment barriers," id., No. 48, at 333 (same), but by letting "[a]mbition... counteract ambition," giving each branch "the necessary constitutional means, and personal motives, to resist encroachments of the others," id., No. 51, at 349. A key "constitutional means" vested in the President-perhaps the key means-was "the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong., at 463. And while a government of "opposite and rival interests" may sometimes inhibit the smooth functioning of administration, The Federalist No. 51, at 349, "[t]he Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." Bowsher, supra, at 730.

S. "Calls to abandon those protections in light of "the era's perceived necessity," New York, 505 U.S., at 187, are not unusual. Nor is the argument from bureaucratic expertise limited only to the field of accounting. The failures of accounting regulation may be a "pressing national problem," but "a judiciary that licensed extraconstitutional government with each issue of comparable gravity would, in the long run, be far worse." Id., at 187-188. Neither respondents nor

the dissent explains why the Board's task, unlike so many others, requires more than one layer of insulation from the President-or, for that matter, why only two. The point is not to take issue with for-cause limitations in general; we do not do that. The question here is far more modest. We deal with the unusual situation, never before addressed by the Court, of two layers of for-cause tenure. And though it may be criticized as "elementary arithmetical logic," post, at 23, two layers are not the same as one."

T. "The President has been given the power to oversee executive officers; he is not limited, as in Harry Truman's lament, to "persuad[ing]" his unelected subordinates "to do what they ought to do without persuasion." Post, at 11 (internal quotation marks omitted). In its pursuit of a "workable government," Congress cannot reduce the Chief Magistrate to a cajoler-in-chief.

U. **The United States concedes that some constraints on the removal of inferior executive officers might violate the Constitution. See Brief for United States 47. It contends, however, that the removal restrictions at issue here do not."**

V. "To begin with, the Government argues that the Com mission's removal power over the Board is "broad," and could be construed as broader still, if necessary to avoid invalidation. See, e.g., id., at 51, and n. 19; cf. PCAOB Brief 22-23. But the Government does not contend that simple disagreement with the Board's policies or priorities could constitute "good cause" for its removal. See Tr. of Oral Arg. 4 1-43, 45-46. Nor do our precedents suggest as much. Humphrey's Executor, for example, rejected a removal premised on a lack of agreement "'on either the policies or the administering of the Federal Trade Com mission,'" because the FTC was designed to be "'independent in character,'" "free from 'political domination or control,'" and not "'subject to anybody in the government'" or "'to the orders of the President.'" 295 U.S., at 619, 625. Accord, Morrison, 487 U.S., at 693 (noting that "the congressional determination to limit the removal power of the Attorney General was essential... to establish the necessary independence of the office"); Wiener v. United States, 357 U.S. 349, 356 (1958) (describing for-cause removal as "involving the rectitude" of an officer). And here there is judicial review of any effort to remove Board members, see 15 U.S.C. §78y(a)(1), so the Commission will not have the final word on the propriety of its own removal orders. The removal restrictions set forth in the statute mean what they say."

W. "Indeed, this case presents an even more serious threat to executive control than

an "ordinary" dual for-cause standard. Congress enacted an unusually high standard that must be met before Board members may be removed. A Board member cannot be removed except for willful violations of the Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to en force compliance-as determined in a formal Commission order, rendered on the record and after notice and an opportunity for a hearing. §7217(d)(3); see §78y(a). The Act does not even give the Commission power to fire Board members for violations of other laws that do not relate to the Act, the securities laws, or the Board's authority. The President might have less than full confidence in, say, a Board member who cheats on his taxes; but that discovery is not listed among the grounds for removal under §72 17(d)(3)." fn. 7

83. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is being held under and pursuant to 22 U.S. C. Section 1732 , the President of the United States and The Hostage Act, passed in 1868, of the inaction of the United States District and Circuit Court in the District of Columbia; ORDERS of the Court are to be signed the Judges in the matters before the Court.

A. Plaintiff, Michael Charles Pilot, Citizen in and of the United States alleges violation of his First, Fifth amendment guaranteeing to all Citizen freedom to be left alone, Right of assembly, Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the [506 U.S. 436] government from engaging in conduct that "shocks the conscience," Rochin v. California, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325-326 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as "procedural" due process and the Right to Petition for redress of the grievances of the requested relief."

84. Plaintiff, Michael Charles Pilot, Citizen in and of the United States is restricted to take an appeal without Order(s) by the presiding judges. Clerks of the Court are "NOT" parties to these action and lack(s) authority the sign ORDER of the Court.

85. Plaintiff, Michael Charles Pilot, Citizen in and of the United States - - - says this actions

of the District and Circuit Court, the inaction(s) of the Judges and clerks of the court(s) acting in their official capacity "shocks the conscience" of plaintiff Michael Charles Pilot.

86. Plaintiff ask the question? - - - did the clerks of the Circuit Court signing the ORDERS of the Court violate establish procedure(s) of the court? That bring justification - - - to bring this action before the President of the United States Donald J. Trump under the Hostage Act,  22 U.S. C. SECTION 1732.

A. Second question is whether the named clerks and judges acted in concert with each other to violate well established rules of the Court, in violation of their judicial immunity?

B. Third question is whether the ORDER of the circuit court of the United States of America is foreign to the Courts of the United States?

C. Fourth question is whether Donald J. Trump President of the United States as the authority - - - to - - - move before Congress - - - to - - - remove the named judges? - - - to have Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge to sign? - - - ORDER and Clerks - - - Rule 11 Sanctions - - - signer of Pleading - - - FOR THE COURT:  - - - Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk and moves for correction under Appellate Rules 3 and 4 to take an Appeal  - - -  Objections and Opposition  - - -  STATEMENT OF POINTS AND AUTHORITY. Federal Oath of Office - - - misconduct - - -  the Government is a "person" and Judges Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge are "persons - - - Subject to Fed. R. Civ. Procedure Rule 45 - - - See - - - Nardone v. United States, 302 U.S. 379.

88.  Government is a "person" and Judges Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge are "persons" - - - Subject to Fed. R. Civ. Procedure Rule 45 - - - See - - - Nardone v. United States, 302 U.S. 379.

89. The Rules Enabling Act, 28 U.S.C. § 2072, authorizes the Court to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before Magistrates thereof) and courts of appeals.

A. "The Court has no authority to enact rules that "abridge, enlarge or modify any substantive right." Ibid.  Pursuant to this authority, the Court promulgated the Federal Rules of Civil Procedure to "govern the procedure in the United States district courts in all suits of a civil nature." Fed. Rule Civ. Proc. 1.  We therefore interpret Rule 11 according to its plain meaning, see Pavelic

& Leflore v. Marvel Entertainment Group, 493 U.S. 120, 123 (1989), in light of the scope of the congressional authorization."

B. Violation of **Rule 11 provides, in full:**

"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of [496 U.S. 392] an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

Also - - - SEE - - - The Court - - - Cooter & Gell v. Hartmarx, 496 U.S. 384 (1990) - -- Rule 11- - -

"Pierce v. Underwood, 487 U.S. 552 (1988), strongly supports applying a unitary abuse of discretion standard to all aspects of a Rule 11 proceeding. In Pierce, the Court held a District Court's determination under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1982 ed.), that "the position of the United States was substantially justified" should be reviewed for an abuse of discretion. As a position is "substantially justified" if it "has a reasonable basis in law

and fact," 487 U.S. at 566, n. 2, EAJA requires an inquiry similar to the Rule 11 inquiry as to whether a pleading is "well grounded in fact" and legally tenable.  Although the EAJA and Rule 11 are not completely analogous, the reasoning in Pierce is relevant for determining the Rule 11 standard of review."

"Two factors the Court found significant in Pierce are equally pertinent here.  First, the Court indicated that "`as a matter of the sound administration of justice,'" deference was owed to the "`judicial actor . . . better positioned than another to decide the issue in question.'"  487 U.S. at 559-560, quoting Miller v. Fenton, 474 U.S. 104, 114 (1985).  Because a determination whether a legal position is "substantially justified" depends greatly on factual determinations, the Court reasoned that the district court was "better positioned" to make such factual determinations.  See 487 U.S. at 560.  A district court's ruling that a litigant's position is factually well grounded and legally tenable for Rule 11 purposes is similarly fact-specific.  Pierce also concluded that district court's rulings on legal issues should be reviewed deferentially.  See id. at 560-561.  According to the Court, review of legal issues under a de novo standard would require the courts of appeals to invest time and energy in the unproductive task of determining "not what the law now is, but what the Government was substantially justified in believing it to have been."  Ibid.  Likewise, an appellate court reviewing legal issues in the Rule 11 context would be required to determine whether, at the time the attorney filed the [496 U.S. 404] pleading or other paper, his legal argument would have appeared plausible.  Such determinations "will either fail to produce the normal law-clarifying benefits that come from an appellate decision on a question of law, or else will strangely distort the appellate process" by establishing circuit law in "a most peculiar, second-handed fashion."  Id. at 561."

"Second, Pierce noted that only deferential review gave the district court the necessary flexibility to resolve questions involving "`multifarious, fleeting, special, narrow facts that utterly resist generalization.'"  Id. at 561-562.  The question whether the government has taken a "substantially justified" position under all the circumstances involves the consideration of unique factors that are "little susceptible . . . of useful generalization."  Ibid.  The issues involved in determining whether an attorney has violated Rule 11 likewise involve "fact-intensive, close calls."  Shaffer & Sandler 15.  Contrary to petitioner's contentions, Pierce v. Underwood is not

distinguishable on the ground that sanctions under Rule 11 are mandatory:  that sanctions "shall" be imposed when a violation is found does not have any bearing on how to review the question whether the attorney's conduct violated Rule 11."

  "Rule 11's policy goals also support adopting an abuse-of-discretion standard.  The district court is best acquainted with the local bar's litigation practices, and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them.  Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation."

  "Although district courts' identification of what conduct violates Rule 11 may vary, see Schwarzer, Rule 11 Revisited, [496 U.S. 405] 101 Harv.L.Rev. 1013, 1015-1017 (1988); Note, A Uniform Approach to Rule 11 Sanctions, 97 Yale L.J. 901 (1988), some variation in the application of a standard based on reasonableness is inevitable.  "Fact-bound resolutions cannot be made uniform through appellate review, de novo or otherwise."  Mars Steel Corp. v. Continental Bank N.A., 880 F.2d at 936; see also Shaffer & Sandler 14-15.  An appellate court's review of whether a legal position was reasonable or plausible enough under the circumstances is unlikely to establish clear guidelines for lower courts; nor will it clarify the underlying principles of law.  See Pierce, supra, 487 U.S. at 560-561."

  "In light of our consideration of the purposes and policies of Rule 11 and in accordance with our analysis of analogous EAJA provisions, we reject petitioner's contention that the Court of Appeals should have applied a three-tiered standard of review.  Rather, an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination.  A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  Here, the Court of Appeals determined that the District Court "applied the correct legal standard and offered substantial justification for its finding of a Rule 11 violation."  277 U.S.App. D.C., at 339, 875 F.2d at 896.  Its affirmance of the District Court's liability determination is consistent with the deferential standard

we adopt today."

# FIRST CAUSE OF ACTION

## Violation of the First and Fifth Amendment

90. Plaintiff, Citizen Michael Charles Pilot repeats, re allege, and incorporates the allegations in the paragraphs above as though fully set forth herein.

91. Plaintiff moves Defendant, Donald J. Trump under the First Amendment Freedom of Speach and Fifth Amendment Right to Due-Process and Equal Protection that Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacked authority as signers of "ORDERS" by the court, in violation of Plaintiff's Fifth Amendment Right to due process.

92. Plaintiff has a compelling justification - - - to sue the Defendant, Donald J. Trump, of the inaction of that Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER and that Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk of Plaintiff's First Amendment Rights - - - Freedom of Speech. Denied hearing and Jury Trial.

93. Plaintiff has a compelling and sole justification  - - - to sue the Defendant, Donald J. Trump under the Hostage Act by the conduct of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk lacked authority as signers of "ORDERS" by the court.  This action is in sufficient to justify such a substanial restriction to take an Appeal - - - **28 U.S.C. § 2284 Three-judge panel.**, a substantial restriction on Plaintiff, Pilot's First and fifth Amendments Right to due-process and equal protection of the law.

      A. Alleged violation Rule of Law and actions taken without a "Judicial-Determination" and/or "ORDER" by a judicial Article III Court of the United States, under the Constitution and laws of the United States.

      B. - - - to the Constitutional Law - - - Constitutional-Law is the fundamental law of a particular level of government.

      C. This constitution establishes a government - - - serves a number of critical

functions.

D. It establishes the governmental structure and allocates power among the levels of government and as such defines the governmental Political relationships. One of the fundamental principles on which our government is founded is that of the separation of powers - - -

E. ARGUMENT - - - More over, the Ninth Amendment to the Constitution of the United States makes it clear that this "Enumeration of Rights" does not in any way deny or limit other Rights that are retained by the People.

F. All other Law(s) in the United States are subordinate to the Federal Constitution. No law, Federal or State, is valid if it violates the Federal Constitution, under the principle of "Judicial-Review", the Supreme Court of the United States determines the constitutionality of "All Laws."

G. In general - - - The Constitution, establishing a frame of government, declaring fundamental principles, and creating a national sovereignty, is not to be interpreted with the strictness of a code of laws or of a private contract, **Fairbanks  vs.     U.S.** , **21 S.Ct. 648, 181 U.S. 287, 45 L.ed. 709, ( Minn. 1901).** Provisions for the Protection of Life, Liberty, and Property - - - The provisions for the protection of life, liberty, and property are to be largely and liberally construed in the favor of the Citizen. **Dorman    vs.    State** ,  **34 Ala. 216, 283, ( 1850),** a life construction should be made in favor of persons charged with a crime. **See     Ex parte, Lange,** **85 U.S. 163 , 18 Wall, 163, 21 l.Ed. 872, (1873).**

94. As a result of the inactions of   Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacked authority as signers of "ORDERS" by the court, acting in concert. Plaintiff has suffered and continue to suffer irreparable harm. Including but not limited fo the Denial of Plaintiff-Appellant, Michael Charles pilots Motion for reconsideration.

95. Plaintiff alleges this conduct of **Outrageous Conduct** of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacked authority as signers of "ORDERS" by the court, acting in concert. - - - are Intentional or Recklessly Causing severe Emotional Distress.

96. Plaintiff alleges this inaction(s) as **Outrageous Conduct** of Rogers and Tatel, Circuit

Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk lacked authority as signers of "ORDERS" by the court **Again - - - Citing - - - Liability** - - - § 218 Liability to persons in possession - - - one who commits a trespass to a chattel - - - Note (b) the chattel is impaired as to its conditions, quality, value

97. Plaintiff alleges this action as **- - -** Negligence defined in Restatement Second, of Tort, Citing - - - § 314 Duty to act for the protection of others. Argument that the Courts, agents, officers and/or employees have a duty to act for my protection under the Constitution and Laws of the United States and as such have failed to due so that is a matter of the Rule of Law.

98. Plaintiff alleges this inactive conduct is in violation of § 431 of Selected Provisions of restatements - - - What Constitution Legal process? - - - **See - - - Negligent Conduct is a legal Cause of Harm to another - - -   see (a) & (b) - - - in this cause of action there is a Rule of Law. - - - Legal harm.**

### SECOND CAUSE OF ACTION
### VIOLATION OF HOSTAGE ACT 22 U.S.C. § 1732
### Violation of the Administrative procedure Act, 5 U. S. C. § 706

(Against Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk other than president Donald J. Trump)

99. Plaintiff repeat, re allege, and incorporate the allegations in the paragraphs above as though fully set forth herein.

100. Plaintiff, Pilot alleges the inactions of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk constitutes a final agency decision of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk in the United States District Court for the District of Columbia and Court of Appeals For the District of Columbia Circuit, including but not limited  - -- to - - - Court of Appeals. NOTE - -- Donald J. Trump, President of the United States/United States of America was sued as - - - Respondent-Intervener-Interpleader. In Civil matter No. 1:17-cv-00929 CKK related case Transfer Order Civil Action No. 17-929(CKK).

101. Plaintiff, Pilot alleges the inactions of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk had no legal or rational justification to deny Pilot's right to have of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge be signers of "ORDERS" of the Court.

101. Plaintiff, Pilot alleges of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk acted in concert with each other, aced arbitrarily, capriciously, not in accordance with the law in violation of 5 U.S.C. § 706 (2)(A) - -- Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. - - - (NOT NO-EXEMPTIONS)

      A. The rules of the court may not violate the United States Constitution and must conform to any Act of Congress.  See  **Frazier vs. Heebe, 482 U.S. 641, (1987) at 483 U.S. 654**,  see **Section 1654** provides; In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein, also see **Civil Rights Cases, 109 U.S. 3, (1888)**.

      B. "federal courts exists only in the absence of a relevant Act of Congress." Palermo v. United States, 360 U.S. 343, 353, n. 11 (1959) (citing Funk v. United States, 290 U.S. 371, 382 (1933), and Gordon v. United States, 344 U.S. 414, 418 (1953)).  Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.  Palermo, supra, at 345-348; Carlisle, supra, at 426; Vance v. Terrazas, 444 U.S. 252, 265 (1980)."

      C. SEE - - **- Hilton v. Guyot, 159 U.S. 113 (1895);** also for injuries resulting from unlawful conduct.  SEE - - - Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 494 (1968);

102. Plaintiff say's - - - to - - - Donald J. Trump in his official capacity as President of the United States - - - to - - - secure Plaintiff, Pilot his person Rights Privileges and Immunities.

103. Plaintiff say's under the Court Rules of the United States District Court, Plaintiff has the Right Under - Rule 9 - - -Pleading Special Matters, Rule 14 - - - Third Practice (b)   When Plaintiff May Bring in Third party - - - Third Party action - - - Reserved to name  Rogers and Tatel,

Circuit Judges, and Ginsburg, Senior Judge and Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk

104. Plaintiff say's under the Court Rules of the United States District Court, Plaintiff has the Right Under Rule 17 Parties Plaintiff and Defendant Capacity (a)(b) Capacity to sue and be Sued, Rule 18 - - - Joinder of Claims and Remedies, (a) Joinder of Claims (b) Joinder of Remedies: Fraudulent Conveyances - - - the action or process of conveying - - -- Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/ Ken Meadows Deputy Clerk lacking the authority to be a signer of pleading - - - again see Rule 11.

A. the Government is a "person" and Judges Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge are "persons" - - - Subject to Fed. R. Civ. Procedure Rule 45 - - - See - - - Nardone v. United States, 302 U.S. 379

105. Plaintiff say's under the Court Rules of the United States District Court, Plaintiff has the Right Under Rule 19 Joinder of Persons Needed for Just Adjudication.

106 Plaintiff, Citizen in and of the United States, Michael Charles Pilot in being held in detention of the "ORDERS" of the United States District Court and the Court of Appeals under the Hostage Act of 22 U.S. C. SECTION 1732.

107. Plaintiff, Citizen in and of the United States, Michael Charles Pilot brings this action to the President of the United States Donald J. Trump in his official capacity - -- and says that this Citizen, Michael Charles Pilot is being held in detention in violation of his personal Liberties - - - "NO" statutes of limitation to bring this action joined with First, Fifth - -- violation of due-process, Ninth and Fourteenth Amendments of the Constitution of the United States for Relief. - - - redress under 5 U.S.C. § 706 (2)(A).

A. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

B. "Article VI, cl. 3, provides that all state and federal officers shall be bound by an oath "to support this Constitution." The oath taken by attorneys as a condition of admission to the Bar of this Court identically provides in part "that I will support the Constitution of the United

States"; it also requires the attorney to state that he will "conduct [himself] uprightly, and according to law." [405 U.S. 682]

# PRAYER FOR RELIEF

**WHEREFORE, Plaintiff** Citizen in and of the United States, Michael Charles Pilot respectfully requests that this Court enter each of the following forms of relief:

a. Immediate consideration of the Hostage Act of  22 U. S. C. SECTION 1732.and Violation of the Administrative procedure Act, 5 U. S. C. § 706 .see Adm. Procedure Act. 5 U.S.C.A. § 551.

b. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant act pursuant to the Hostage Act of  22 U.S. C. SECTION 1732 for the release of Citizen, Michael Charles Pilot hed in Hostage of the contested actions - -- inactions of - Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge failed to sign - - - "ORDER" and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacking the authority to be a signer of pleading - - - again see Rule 11.

c. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant  - -- revoke the Federal Oath of office of Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge, violation of Oath of office and Federal oath of office.

d. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant to act under the appointment clause of the Constitution of the United States under Article 3 the appointment clause. Plaintiff reliance - -- Vermont Agency of Natural Resources  vs.  United States 529 U.S. 765 (2000). Under the False Claims Act (FCA), a private person (the "relator") may bring a qui tam civil action "in the name of the [Federal] Government," 31 U.S.C. § 3730(b)(1), against "[a]ny person" who, inter alia, "knowingly presents . . . to . . . the . . . Government . . . a false or fraudulent claim for payment," § 3729(a).

e. Upon information and belief Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge received compensation as Judges of the Courts. A private individual has standing to bring suit in federal court on behalf of the United States under the FCA.  Stevens meets the requirements necessary to establish Article III standing.  In particular, he has demonstrated "injury in fact" -- a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical."

Whitmore v. Arkansas, 495 U.S. 149, 155. He contends he is suing to remedy injury in fact suffered by the United States -- both the injury to its sovereignty arising from violation of its laws and the proprietary injury resulting from the alleged fraud. In this matter a fraud upon the Court and Citizen, Michael Charles Pilot as cause for consideration of appointment of Michael Charles Pilot as United States Attorney.

f. See **Holt    vs.  United States, (19/31/10) 218 U.S. 254, 54 L.  Ed.  1021, 31 S.Ct. 2**. In the Twenty-Fourth Congress. Sess.  I, chapter CCXXX section 4.  That a person learned in the law can act as attorney for the United States. This act does not mention that the person is required to be license or proof of education for a college of law to practice law. The right to practice law is a federally protected personal liberty  see **Siegert    vs.    Gilley, 500 U.S. 226 (1991)**

g. And is a private right of this sovereign Citizen in and of the United States that is exempt for the statutes of the corporate State of Michigan. See **United States  vs, Cooper Corporation, 312 U.S. 600, (1941)** note from the By-laws of the corporate State of Michigan.  See **Kawananokoa    vs. Polyblank, 205 U.S. 349 (1907)**.  The rules of the court may not violate the United States Constitution and must conform to any Act of Congress.  See **Frazier  vs.  Heebe, 482 U.S. 641, (1987) at 483 U.S. 654**,  see **Section 1654** provides; In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein, also see **Civil Rights Cases, 109 U.S. 3, (1888)**.

h. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant to act under the appointment clause of the Constitution of the United States under Article 3 the appointment clause appoint Douglas Dwight Bennett, Citizen in and of the United States as Special United States Attorney. Plaintiff reliance - -- Vermont Agency of Natural Resources  vs.  United States 529 U.S. 765 (2000). Under the False Claims Act (FCA), a private person (the "relator") may bring a qui tam civil action "in the name of the [Federal] Government," 31 U.S.C. § 3730(b)(1), against "[a]ny person" who, inter alia, "knowingly presents . . . to . . . the . . . Government . . . a false or fraudulent claim for payment," § 3729(a).

i. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant act because Douglas Dwight Bennett has Assignment of 50%

claim of interest in the actions in the United States District Court for the District of Columbia and the Court of Appeals For the District of Columbia.

    j. Citing on page 85 and 86 - -- **"WHEREFORE, notice is given that I, Michael Charles Pilot,** natural Citizen in and of the United States In Propria persona, has assigned joint claim - - - Jointed of Parties for standing in this Court of action to Douglas Dwight Bennett pursuant to MCL *570.23 — Assignment or waiver — Section 25.* (which is silent at this time) — "All liens or claims which may arise or accrue under the terms of this act shall be assignable, and proceedings to enforce such liens may be maintained by and in the name of the assignees, who shall have as full and ample power to enforce the same as if such proceedings were taken under the provisions of this act by and in the name of the lien claimant [claimants] themselves. No lien provided for in this act shall be defeated or waived by the taking by the lien claimant, from any person, or any security for such debt — in the absence of express agreement that the taking of such security shall be a waiver of the lien." — *A Lien is defined as — Lien*. A claim, encumbrance, or charge on property for payment of some debt, obligation or duty. *Sullins v. Sullins, 65 Wash 2d. 283, 396 P. 2d 886, 888.* Qualified right of property which a creditor has in or over specific property of his debitor, as security for the debit or charge or for performance of some act. Right or claim against some interest in property created by the law as an incident of contract. Right to enforce charge upon property of another for payment or satisfaction of debt or claim (in this matter the federal law suit in this U.S. Court, *is the core of this action* in actual controversy in violation of the laws and the Constitution of the United States as the law suit appears and is pleaded on its face and the liability of the named Defendant - - D -1 - - - Colleen Kollar-Kotelly, as being sued Personally as an Individual, acting under the color of law - - - usage-custom as United States District Judge, as a Federal Employee."

  k. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant and this Court in reaching its decision in Holmes Group, the Court first attributed to the words "arising under" in § 1338(a) the same meaning those words have in §1331. See id., at 829-830. It then reasoned that a counterclaim asserted in a responsive pleading cannot provide the basis for "arising under" jurisdiction consistently with the well-pleaded complaint rule. See Vaden v. Discover Bank, 556 U.S. ____ (2009) as a Reliance Defense to this **"well-Pleaded-Technical-Complaint"** that is also frequently called in the books **"words of art"**.

Immaterial, not affecting substantial rights, as a means to present the Plaintiff's Complaint and he Relied Requested arising under the laws of the United States that confers on district court [exclusive] original jurisdiction of any civil action arising under any Act of Congress

l. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant and this Court in reaching The argument of Administrative acts. The process by which an administering agency issues order. see Adm. Procedure Act. 5 U.S.C.A. § 551.

m. Immediate consideration of Donald J. Trumps President of the United States acting in his official capacity as Defendant and this Court declare the actions of Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacking the authority to be a signer of pleading are "NON" judicial - - - Administrative acts reviewable ( Appealable)  under  5 U.S.C. § 706 (2)(A).

n. An order granting Plaintiff cost, fees and disbursements incurred in connection with these proceedings and such relief as this Court deems just and proper.

o. Immediate consideration Sanction under Rule 11 of the Rules for the United States District Courts - - - Federal Rules of Civil procedure - - - the Government is a "person" and Judges Rogers and Tatel, Circuit Judges, and Ginsburg, Senior Judge are "persons" - - - Subject to Fed. R. Civ. Procedure Rule 45 and and that Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk lacking the authority to be a signer of pleading - - - again see Rule 11.

p. Immediate consideration of this Court for leave to join Tatel, Circuit Judges, and Ginsburg, Senior Judge and Mark J. Langer, Clerk - - - BY : /s/  Ken Meadows Deputy Clerk as Third Party Practice, action Rule 14. Thirty-Party Practice.   (b) When Plaintiff May Bring in Third Party and Rule 17 (b) Capacity to Sue and be Sued - - - if necessary.

q. Reservation of Rights to plead before Jury for 1 to 10 times damages under the Punitive Damages and the Rule of Law, gross fraud, malice, oppression, or wanton, willful, or reckless conduct. Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made above. [**TXO Production Corp. v. Alliance Resources Corp. 509 U.S. 443 (1993).**]

**WHEREFORE relief is proper on consideration UNITED STATES   vs. UNITED STATES OF AMERICA**. "The original United States of America, mentioned in the Preamble and

Article II of the U.S. Constitution, was created by the Articles of Confederation; the Constitution of the United States, which was named as such by the first Congress in 1789, creates and vests authority in Government of the United States, i.e., the United States. It does not bestow any particularly authority other than electing the president on the United States of America. Once the President of the United States of America is elected, he then takes the oath of office to become President of the United States."

A. The maddening word game is somewhat like figuring out which thimble the con artist's pea is under. In Article II(a) of the Uniform Detainers Act, which has been adopted on behalf of the United States by Congress and legislatures in most States of the Union, we find that the United States of America is foreign to most States: "(a) 'State' shall mean a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico."

B. The congressional act on behalf of the United States, as distinguished from the United States of America, preserves the foreign jurisdiction definition found in Article II(a) of the uniform act adopted by each State of the Union. The United States of America is defined as a foreign state – foreign to States of the Union, and where Congress adopted the act on behalf of the United States without alteration, foreign to the United States as well. It is clear from the 28 CFR § 96b delegation to the Director of the Bureau of Prisons that the United States and the United States of America are two distinct entities and that custody of United States of America prisoners can be transferred to United States custody, but the delegation doesn't come into clear focus until it is understood in the context of treaties and executive agreements.

C. United States and the United States of America are two distinct entities and that custody of United States of America prisoners can be transferred to United States custody, but the delegation doesn't come into clear focus until it is understood in the context of treaties and executive agreements. **ARGUMENT of Plaintiff, Michael Charles Pilot is proper and requests for relief is proper under 22 U.S. C. Section 1732  The Hostage Act, passed in 1868 and the President of the United States Donald J. Trump President of the United States.**

D. **The first Code section I presented was 28 U.S.C. § 1366. I used it because it distinguishes between "laws of the United States" and "Acts of Congress."**

Dated: 1-25-19

Michael Charles Pilot
c/o 14098 Marshall Ave.
County of Macomb, Michigan 48089
In Propria Persona,     in ones own proper person
All Rights Reserved U.C.C. I-207 (308),
     without prejudice,
     (586) 764-2615

## **JURY DEMAND**

Plaintiff, Michael Charles Pilot demands a jury trial.

Dated: 1-25-19

Michael Charles Pilot
c/o 14098 Marshall Ave.
County of Macomb, Michigan 48089
In Propria Persona,     in ones own proper person
All Rights Reserved U.C.C. I-207 (308), without prejudice,
     (586) 764-2615